UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| INTELLIGENT AUTOMATION DESIGN, LLC | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | No. 5:16-cv-11-CMC |
| | § § | |
| ZIMMER BIOMET HOLDINGS, INC., ET. AL. | § § § | |
| *Defendants.* | § § | |

# ORDER

Before the Court is the following pending motion:

**Defendant's Motion to Transfer Venue to the Middle District of Florida, Jacksonville Division (Docket Entry #25).**

The Court, having reviewed the relevant briefing, is of the opinion the motion should be **GRANTED.**

## BACKGROUND

On January 14, 2016, Intelligent Automation Design, LLC ("IAD" or "Plaintiff"), a Pennsylvania limited liability company, filed this lawsuit against Zimmer Biomet Holdings, Inc.; Biomet, Inc. d/b/a Biomet Texas; Biomet Microfixation, LLC; and LVB Acquisition, Inc., alleging infringement of U.S. Patent No. 7,091,683 ("the '683 patent"). The '683 patent covers "a method of monitoring and controlling the seating of screws . . . which minimizes or avoids stripping." (Docket Entry #17, Exh. A at 5). The asserted product line, "iQ Intelligent System," is a motorized screwdriver used to install bone screws. (Docket Entry #17, Exhs. B and C).

1

On March 24, 2016, Plaintiff filed a First Amended Complaint ("FAC") against Zimmer Biomet CMF and Thoracic, LLC d/b/a Biomet Microfixation ("ZBCMF"), which is the new name for originally named defendant Biomet Microfixation, LLC. (FAC, ¶ 2). On March 31, 2016, the Court dismissed, without prejudice, Zimmer Biomet Holdings, Inc., Biomet, Inc., and LVB Acquisition, Inc., leaving as the sole remaining defendant ZBCMF, a Florida company headquartered in Jacksonville. (Docket Entry #25 at 3).

**MOTION TO TRANSFER**

Pursuant to 28 U.S.C. § 1404(a), ZBCMF moves to transfer venue of this case to the Jacksonville Division of the U.S. District Court for the Middle District of Florida. In its motion, ZBCMF asserts neither party has relevant connections to the Eastern District of Texas. (Docket Entry #25 at 2-4). According to ZBCMF, the only prior instance in which a Zimmer company was sued in this district for alleged patent infringement, the Federal Circuit Court of Appeals ordered the case transferred to the home forum due to the "substantial conveniences in trying [the] case" there and the lack of any significant ties to the Eastern District of Texas. *See In re Zimmer Holdings, Inc*., 609 F.3d 1378, 1381 (Fed.Cir. 2010). ZBCMF asserts the same outcome is required here.

Specifically, ZBCMF states it has no office or other facility in the State of Texas. ZBCMF developed the accused system with the assistance of an engineering firm located near Kansas City, and the accused system is manufactured in the Philippines. The ZBCMF employees who were involved in the development of the accused system; the ZBCMF employees who currently handle marketing, financial, sales, and regulatory compliance issues for the accused system; and four of the ZBCMF inventors work and/or currently live in or near either Jacksonville or Tampa, Florida. Although ZBCMF concedes it distributes the accused

2

system worldwide, it states it rarely sells the system in the United States. According to Ryan Luby, one of the four original development engineers at ZBCMF and its current Associate Director of Product Development, ZBCMF's records reflect there has not been a single sale of an accused system within the Eastern District of Texas (although it is possible it has distributed a few accused systems to service providers within this district on a consignment basis).[1] Declaration of Ryan Luby ("Luby Decl."), ¶¶ 14, 15.

In response, IAD argues ZBCMF has not met its burden of showing the proposed transferee district is a clearly more convenient venue than the one chosen by IAD. (Docket Entry #48 at 1). IAD states it has chosen "a centrally-located forum that provides a Court with unique expertise in patent litigation and compulsory power over potentially hundreds of non-party witnesses with material evidence that the Middle District of Florida does not have." *Id.* at 4. According to IAD, the Eastern District of Texas has significant contacts with ZBCMF distributors and sales representatives, several of whom reside in Texas. *Id*. at 5.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). If the case

---

[1] According to IAD, Luby does not have personal knowledge of ZBCMF's sales or consignments to either this district or the transferee district. *See* Deposition of Ryan Luby ("Luby Dep.") at 44:8-18; 75:18-20 & 108:17-109:5. IAD objects to paragraphs 14 and 15 of Luby's declaration as based upon inadmissible hearsay. *Id*. at 75:18-20 ("Q. So this list is only from the memory of Sheldon Green or Mr. Wernz? A. That is correct."). In its reply, ZBCMF explains Luby gained personal knowledge of the information in question after reviewing information provided to him by others, "no differently than if his boss had asked him to pull and review that information in the ordinary course of his job duties." (Docket Entry # 52 at 5, n. 5) (citing Luby Dep. at 95:14–25, 99:10–100:4, 111:17–114:4). According to ZBCMF, Luby's collection of distribution information in the normal course of his job duties requires reliance on information provided by indirect salespeople. Ruby Dep. at 105:3–20. IAD's objections to Luby's declaration are **overruled**.

3

could have been brought in the transferee venue, the defendant must show the transferee venue is "clearly more convenient." *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008), *cert. denied*, 555 U.S. 1172 (2009).

Courts look to public and private interest factors to determine if transfer is appropriate. *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 581 n.6 (2013) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S. Ct. 544 (1995)). The private interest factors include:

(1) the relative ease of access to sources of proof;

(2) the availability of compulsory process to secure the attendance of witnesses;

(3) the cost of attendance for willing witnesses; and

(4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981)). The public factors include:

(1) the administrative difficulties flowing from court congestion;

(2) the local interest in having localized interests decided at home;

(3) the familiarity of the forum with the law that will govern the case; and

(4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Id.* None of the factors alone hold dispositive weight; all must be balanced together to determine if transfer is appropriate. *Id.*

ANALYSIS

There is no dispute IAD could have filed this case in the Middle District of Florida. Therefore, in deciding whether to transfer venue, the Court will analyze the private and public interest factors set forth above.

**Private Interest Factors**

<u>Sources of Proof</u>

The first private interest factor is the relative ease of access to sources of proof. Even though technical advances have made it easier to transfer documents over long distances, this factor is still part of the analysis. *Volkswagen II*, 545 F.3d at 316. Courts generally look to the distance documents, or other evidence, must be transported from their existing location to the trial venue. *See id.* In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer, so the place where the defendant's documents are kept weighs in favor of transfer to that location. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

According to Luby, ZBCMF houses all of its domestic documents related to the accused system at its headquarters in Jacksonville, Florida. Luby Decl., ¶ 17. Luby testified specifically the development, sales, and distribution documents are in Jacksonville. Luby Dep. at 48:8-13. ZBCMF also claims sales orders for the accused system and the accompanying accessories are routed through Jacksonville, and long-term consignments of the accused system are tracked there as well. (Docket Entry #52 at 3) (citing Luby Dep. at 21-24).

In response, IAD does not identify any of its own documents in this forum. IAD's primary argument regarding this factor is based on the presence of sales representatives ("reps") and customers of ZBCMF in other parts of the United States, including in or around the Eastern

District of Texas. According to IAD, ZBCMF imports the accused system, and its related accessories, such as batteries, screws and plates, from the Philippines to ZBCMF's facility in Jacksonville, Florida, where they are inspected before being sent to Biomet, Inc.'s facility in Warsaw, Indiana. Luby Depo. at 22:10-17. The products are distributed from the Warsaw facility to doctors and hospitals through a distribution network made up of both direct and indirect distributors. *Id.* at 13:18-25. Direct distributors or sales reps are employed by ZBCMF, while indirect distributors are independent contractors that ultimately report to a ZBCMF employee. *Id.* at 14:4-6.

While there are no direct distributors in either the proposed transferee district or this one, there are two indirect salespeople who cover the Eastern District of Texas. *Id.* at 14:13-15 & 16:11-16. One is based in Dallas, and one is based in Houston.[2] *Id.* at 17:3-7. IAD states the distributions to the Eastern District of Texas are significant and comparable to those to Jacksonville, and any sources of proof held by these representatives or other relevant distributors of the accused system in Texas weigh heavily in favor of denying transfer. *Id.* at 27:5-15. IAD also states additional sources of proof may be in other places around the country, and Jacksonville has no greater connection to the evidence than this district. *See id.* at 101:18-22 (documents in Kansas City); 35:9-16 (documents in Michigan); 47:20-48:4 (documents created

---

[2] According to IAD, the Dallas salesperson who covers part of this district has at least three salespeople below him. *See* Luby Dep. at 17:9-17. The Houston and Dallas reps report to the sales manager for the Southwest region, who is an employee of ZBCMF but is based out of Dallas. *Id.* at 60:1-23. The Southwest region covers Texas, Colorado, Arizona, Oklahoma, Nebraska, Utah, and part of Louisiana. *Id.* at 59:16-21. IAD asserts the manager of the Southwest region maintains documents related to the consignments and sales of accused devices and is able to access the corporate system electronically, thus weighing against transfer. *Id.* at 60:24-61:9. The Court disagrees, noting the Southwest manager, and any documents he may have in his possession, are located outside the Eastern District of Texas. *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed.Cir. 2014) ("The comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums.").

by independent contractors or physicians); 84:7-21 (defense counsel in Indianapolis and Warsaw, Indiana); *see also* Docket Entry # 25 at 2 (asserting that Pennsylvania, New Jersey, Virginia and Washington, D.C. have connections to this case).

As noted above, the bulk of relevant evidence comes from the accused infringer. Luby has represented that ZBCMF houses all of its domestic development, sales, and distribution documents in Jacksonville and no relevant documents are located in Texas.[3] As in *Groupchatter*, here "[p]erhaps most important in the analysis of this factor is [IAD's] failure to identify any of its own documents or employees in this District." 2016 WL 2758480, at *3. At most, the possibility that some additional relevant documents may exist in Texas (as well as in Florida, Kansas, Indiana, Michigan, Georgia, Pennsylvania, New Jersey, Virginia, Washington D.C., and elsewhere) only lessens the degree to which this factor weighs in favor of transfer; it does not nullify ZBCMF's identification of documents related to the accused system located in Jacksonville, Florida.

The Court finds this factor weighs slightly in favor of transfer.

Availability of Compulsory Process

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses, particularly nonparty witnesses whose attendance may need to be secured by court order. *In re Volkswagen II*, 545 F.3d at 316. The Court gives more weight to

---

[3] IAD objects to Luby's statement as vague, speculative, and insufficient to weigh this factor in favor of transfer. Specifically, IAD argues Luby testified there are several witnesses within the State of Texas who have evidence or access to evidence. Even so, "there is no reason to believe the statements contained in Mr. [Luby's] declaration under oath are false as they pertain to the location of sources of proof for the accused . . . products in this case." *Groupchatter, LLC v. Itron, Inc.*, No. 15-900, 2016 WL 2758480, at *3 (E.D.Tex. May 12, 2016). The Court would still grant ZBCMF's motion even giving little to no weight to this part of Luby's declaration.

7

those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *Groupchatter,* 2016 WL 2758480, at *3.

No nonparty witnesses have been identified as being within the Eastern District of Texas. ZBCMF identifies two nonparty witnesses with knowledge of the development of the accused system (engineers Larry Miller and Bradley Winteroth) who reside in either Jacksonville or Tampa, Florida, within the subpoena power of the Middle District of Florida. Another former employee and potential nonparty witness is engineer Laura Telezyn. She resides in Indianapolis, Indiana. Luby Decl., ¶ 18.

In response, IAD only generally identifies "hundreds" of potential nonparty healthcare providers who have received the accused products in this district, but whose relevance to the litigation is not clear. Courts in this district have rejected similar arguments that the mere presence of sales reps or customers in Texas supports a finding that this factor weighs against transfer.[4] *See Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382, at *5, n. 4 (E.D. Tex. Jan. 23, 2012) ("Plaintiff again relies on the fact that Defendants have resellers and customers located in Texas to argue that transfer is not warranted. Plaintiff, however, fails to identify even one employee or former employee of those companies that resides within 100 miles of this court and might have information relevant to this lawsuit.").

---

[4] Even if the Court were to consider the mere presence of sales reps and customers, ZBCMF asserts more such witnesses reside in the Middle District of Florida than in the Eastern District of Texas. According to Luby's deposition testimony, multiple salespeople handle iQ sales in Florida, and Jacksonville, in particular, is home to David Glisson, an independent iQ sales rep not employed by ZBCMF. Luby Dep. at 14:13–16:6). Another rep, Van Alexander, also covers Jacksonville and the surrounding areas. *Id.* at 92:21–93:16. According to ZBCMF, approximately four times as many iQ devices have been distributed in the Middle District of Florida as compared to the Eastern District of Texas. *See id.* at 27:5–22; *see also RSI Video Techs., Inc. v. Vacant Prop. Sec.,LLC*, No. 13-170, 2013 WL 5530619, at *3 (S.D. Tex. Oct. 4, 2013) ("[T]o the extent the testimony of customers or potential customers is needed, the Chicago area is likely to have a deeper pool of potential witnesses for that purpose.").

The Middle District of Florida has subpoena power over at least two potential known nonparty witnesses in this case, and "there are none specifically identified by location and relevance who are subject to the subpoena power of this Court." *Groupchatter*, 2016 WL 2758480, at *4. Thus, this factor weighs in favor of transfer.

Cost of Attendance for Willing Witnesses

This factor weighs the cost of attendance for all willing witnesses, considering the convenience for both party and nonparty witnesses. *See Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *Groupchatter*, 2016 WL 2758480, at *4 (quoting *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (citations omitted)). Witnesses who would have had to travel a significant distance anyway should be discounted under the 100-mile rule. *Genentech*, 566 F.3d at 1344.

Approximately 200 people work at ZBCMF's headquarters in Jacksonville. Luby Decl., ¶ 16. With one exception, the ZBCMF employees who were involved in the development of the accused iQ system all currently work and reside in or near either Jacksonville or Tampa, Florida.[5] *Id.*, ¶ 10. ZBCMF's patent application, mentioned in paragraph 12 of IAD's FAC, names four current or former ZBCMF employees among the seven total inventors. Three of the four ZBCMF inventors work or reside in or near Jacksonville, and the fourth resides in or near Tampa. *Id.*, ¶ 11.

---

[5] As noted above, one of the ZBCMF employees involved with the development of the accused system lives in or near Indianapolis, Indiana.

9

Paragraph 9 of IAD's FAC cites to an article about the accused iQ system written by Brian Hatcher, Ph.D. Dr. Hatcher is a ZBCMF employee (Director of Clinical Research) who works and resides in or near Jacksonville, Florida and who has been involved with the marketing of the accused system. *Id*., ¶¶ 12, 19. ZBCMF has identified two other specific employees involved with marketing, as well as three employees involved with the financing/sales of the accused system, all of whom work and reside in or near Jacksonville. *Id*., ¶¶ 19, 20. Kim Reed, Manager of Regulatory Affairs, has been involved with regulatory affairs related to the accused system through her employment with ZBCMF. She also works and resides in Jacksonville. *Id*., ¶ 21.

Whereas ZBCMF identified over ten willing witnesses in the Middle District of Florida, IAD did not name any of its own willing witnesses in this district. Instead, IAD argues this district is located closer to the nonparty witnesses identified by ZBCMF living in Kansas and Indiana as well as the nonparty witnesses (Dave Werntz and Sheldon Greene) who distribute the accused system in the State of Texas. As noted above, their relevance to trial is not clear.

Because important witnesses reside within the Middle District of Florida and no nonparty witnesses have been identified within the Eastern District of Texas, it would be far less costly and inconvenient for the witnesses to travel to court in Florida if this case is transferred. As noted by the Fifth Circuit, "it is an obvious conclusion that it is more convenient for witnesses to testify at home and that additional distance means additional travel time" and additional monetary burden. *See Volkswagen II*, 545 F.3d at 317 (citation, quotation marks, and brackets omitted). "Witnesses not only suffer monetary costs, but also the personal costs associated with being away from work, family, and community." *See id.*

Considering all of the evidence, the Court finds this factor weighs heavily in favor of transfer.

All other Practical Problems

The fourth factor is a catchall for concerns not addressed by the other three factors. Neither party having addressed this factor, the Court finds it neutral.

**Public Interest Factors**

Court Congestion

The first of the public interest factors is court congestion. This factor is the most speculative and cannot alone outweigh other factors. *Genentech*, 566 F.3d at 1347. However, the speed with which a case may get to trial is relevant under the § 1404(a) analysis. *Id.* Due to its speculative nature and the fact neither party specifically addresses it, the Court finds this factor neutral.

Local Interest

The second public interest factor is the local interest in the case. The Supreme Court has held "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S. Ct. 839, 843 (1947). Thus, this factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp.*, 330 U.S. at 508-09). Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318. Additionally, local interest may favor transfer when the transferee venue is home to a party because the suit may call into question the reputation of

individuals that work and conduct business in the community. *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

As addressed exhaustively above, ZBCMF (the developer, distributor, and marketer of the accused iQ system) is located in the Middle District of Florida, and the majority of its witnesses and evidence are located there. IAD has not identified any local interest the Eastern District of Texas has, other than to generally argue the accused system is possibly distributed by sales reps to hospitals and physicians in this district. IAD further asserts the accused system was "mostly designed by an engineering firm in Kansas City," is manufactured in the Philippines, and distributed through a distribution center in Indiana. (Docket Entry # 48 at 13).

The Court finds the Middle District of Florida has a local interest in the outcome of this litigation. Many of the individuals who work directly with the development, marketing, and sales of the accused system work and reside in Florida. ZBCMF has specifically identified individuals whose work and reputation are being called into question by the allegations in this action. On balance, the Court finds this local interest factor weighs in favor of transfer.

Familiarity With the Governing Law

Courts must consider "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. IAD claims this Court's "familiarity with patent cases, predictable docket, and well-developed set of Local Patent Rules" provide a level of efficiency that allow it to best preside over this case. (Docket Entry #48 at 12-13). According to the Federal Circuit, "'[p]atent claims are governed by federal law,' and as such 'both [courts are] capable of applying patent law to infringement claims.'" *In re TS Tech United States Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008)(internal quotations and citation omitted). Therefore, the Court finds this factor neutral.

Avoidance of Unnecessary Conflict of Laws Problems

Neither party has raised any possible issues with conflicting laws. Therefore, this factor is neutral.

**CONCLUSION**

A movant seeking to transfer bears the evidentiary burden of establishing the desired forum is clearly more convenient than the forum where the plaintiff filed the case. *See Genentech*, 566 F.3d at 1342. After reviewing all of the relevant factors, the Court finds ZBCMF has met its burden of showing the Middle District of Florida, Jacksonville Division is a clearly more convenient forum. Accordingly, it is

**ORDERED** Defendant's Motion to Transfer Venue to the Middle District of Florida, Jacksonville Division (Docket Entry #25) is **GRANTED.** It is further

**ORDERED** the Clerk of the Court is directed to **TRANSFER** this action to the Middle District of Florida, Jacksonville Division.

**SIGNED this 21st day of July, 2016.**

_____
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE